IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:21-CV-175-RJC-DCK

| | |
|---|---|
| APEX BRANDS, INC., and APEX TOOL GROUP, LLC,        )<br>)<br>     Plaintiffs,        )<br>)<br>v.        )<br>)<br>JOBBOX CO.,        )<br>)<br>     Defendant.        )<br>) | <br><br><br><br><br><br>MEMORANDUM AND<br>RECOMMENDATION |

**THIS MATTER IS BEFORE THE COURT** on "Defendant Jobbox Co.'s Motion To Dismiss For Lack of Personal Jurisdiction, Improper Venue; Or In The Alternative To Transfer" (Document No. 9) filed May 21, 2021. This motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b) and is now ripe for disposition. Having carefully considered the arguments, the record, and the applicable authority, the undersigned will respectfully recommend that the motion be granted to the extent that the motion seeks a transfer to the Middle District of Florida.

## I. BACKGROUND

Plaintiffs Apex Brands, Inc. and Apex Tool Group, LLC (collectively, "Plaintiffs") initiated this action with the filing of a "Complaint" (Document No. 1) on April 20, 2021 against Defendant Jobbox Co. ("Defendant"). The Complaint asserts claims against Defendant for: (1) Infringement of Federally Registered Trademarks; (2) False Designation of Origin and Unfair Competition; (3) Federal Trademark Dilution; (4) Common Law Trademark Infringement and

Unfair Competition; (5) State Statutory Unfair Competition; and (6) Cybersquatting. (Document No. 1).

The Complaint provides the factual background underpinning Plaintiffs' lawsuit. Plaintiffs manufacture professional hand and power tools, and they are headquartered in Huntersville, North Carolina. Id. at p. 3. "JOBOX ®" is one of the many brands held by Plaintiffs. Id. Plaintiffs sell their products nationally through a variety of different distribution methods, including marketplaces such as Amazon.com, as well as websites including jobox.com. Id. at p. 4.

JOBOX ® is a brand of truck boxes that was founded over forty years ago and became popular as a means of safely and securely transporting tools. Id. at p. 4. The brand eventually expanded to include a wider variety of similarly useful storage products. Id. at p. 5. Some of Plaintiffs' customers, including Thompson Rental Services, allegedly purchase JOBOX ® products for the purpose of renting them out through their website. Id. at p. 6.

According to Plaintiffs' Complaint, Plaintiffs and their predecessors in interest have used the JOBOX ® mark for decades, and the mark was issued to Plaintiffs' predecessor in interest on October 3, 1995. Id. at p. 7.

Plaintiffs allege that Defendant's application uses a markedly similar title ("JOBBOX") to advertise and market a competing good. Id. at p. 9. Plaintiffs claim to have suffered irreparable harm as a result of the alleged trademark infringement. Id. at p. 10.

Defendant's application is available on major electronic application distributors and is available for download across the country. (Document 11, p. 1). The application, though, is allegedly only functionally available in Michigan and Florida. (Document No. 10, p. 3). A user located in North Carolina that attempts to use the application receives a return message that reads "SERVICE NOT AVAILABLE." Id.

Defendant filed "Defendant Jobbox Co.'s Motion To Dismiss For Lack Of Personal Jurisdiction, Improper Venue; Or In The Alternative To Transfer" (Document No. 9) and its supporting "Defendant Jobbox Co.'s Memorandum In Support Of Motion To Dismiss For Lack Of Personal Jurisdiction, Improper Venue; Or in The Alternative To Transfer" (Document No. 10) on May 21, 2021.  Plaintiffs filed "Plaintiffs' Apex Brands Inc., And Apex Tool Group, LLC Response In Opposition To Defendant Jobbox Co.'s Motion To Dismiss;  Or In The Alternative To Transfer" (Document No. 11) on June 4, 2021.  Defendant filed "Defendant Jobbox Co.'s Reply To Plaintiffs' Response In Opposition To Defendant's Motion To Dismiss" (Document No. 12) on June 10, 2021.  The pending motion is now ripe for review and recommendation to the presiding district judge.

## II.  STANDARD OF REVIEW

### A. Motion to Dismiss Pursuant to Rule 12(b)(2)

A party invoking federal court jurisdiction has the burden of establishing that personal jurisdiction exists over the defendant.  New Wellington Fin. Corp. v. Flagship Resort Dev. Corp., 416 F.3d 290, 294 (4th Cir. 2005);  Combs v. Bakker, 886 F.2d 673, 676 (4th Cir.2005).

> When a court's personal jurisdiction is properly challenged by a Rule 12(b)(2) motion, the jurisdictional question thus raised is one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of evidence.... [W]hen, as here, the court addresses the question on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge. In considering a challenge on such a record, the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction.

Combs, 886 F.2d at 676 (internal citations omitted). "Mere allegations of in personam jurisdiction are sufficient for a party to make a prima facie showing." Barclays Leasing, Inc. v. Nat'l Bus. Sys., Inc., 750 F. Supp. 184, 186 (W.D.N.C. 1990). The plaintiff, however, "may not rest on mere allegations where the defendant has countered those allegations with evidence that the requisite minimum contacts do not exist." IMO Ind., Inc. v. Seim S.R.L, 2006 WL 3780422, at *1 (W.D.N.C. Dec. 20, 2006). "Rather, in such a case, the plaintiff must come forward with affidavits or other evidence to counter that of the defendant ... factual conflicts must be resolved in favor of the party asserting jurisdiction...." Id.

Questions of jurisdiction are answered by a two-step analysis: (1) the Court must determine whether the North Carolina long-arm statute confers personal jurisdiction; and (2) the Court must determine whether the exercise of that statutory power will violate the due process clause of the U.S. Constitution. Gen. Latex & Chem. Corp. v. Phoenix Med. Tech., 765 F. Supp. 1246, 1248–49 (W.D.N.C. 1991). The statutory inquiry merges with the constitutional inquiry, essentially becoming one. See ESAB Grp., Inc. v. Centricut, Inc., 126 F.3d 617, 623 (4th Cir.1997).

There are two varieties of personal jurisdiction, general and specific. General jurisdiction requires "substantial" or "continuous and systematic" contacts or activities in the forum state and is not at issue in the instant case. Specific jurisdiction exists when a court exercises personal jurisdiction over a defendant in a suit *arising out of* or *related to* the defendant's contacts with the forum. Helicopterous Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414 (1984).

Due process precludes a court from asserting jurisdiction over a defendant unless the defendant has certain minimum contacts with the forum state. The Fourth Circuit has "synthesized the Due Process Clause for asserting specific jurisdiction into a three-part test ... '(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State;

4

(2) whether the plaintiff's claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable.'" New Wellington, 416 F.3d at 294 (citing Mitrano v. Hawes, 377 F.3d 402, 407 (4th Cir. 2004)).

**B. Motion to Dismiss Pursuant to Rule 12(b)(3)**

When an objection to venue has been raised under Rule 12(b)(3), the burden lies with the plaintiff to establish that venue is proper in the judicial district in which the plaintiff has brought the action. Static Control Components, Inc. v. Intersolution Ventures, Ltd., 2006 WL 2042900, at *10 (M.D.N.C. July 17, 2006) (citing Plant Genetic Sys., N.V. v. Ciba Seeds, 933 F. Supp. 519, 526 (M.D.N.C. 1996)). Venue in civil actions is proper in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "The decision to transfer is left to the sound discretion of the trial court." Uniprop Manufactured Housing Commun. Income Fund v. Home Owners Funding Corp. Of Am., 753 F. Supp. 1315, 1322 (W.D.N.C. 1990). In determining whether to transfer a case, the plain language of the statute requires that the Court balance the convenience to the parties and witnesses, as well as the interests of justice. Id.

> In considering a motion to transfer, a court should consider, among other things, the plaintiff's initial choice of forum; the residence of the parties; the relative ease of access of proof; the availability of

> compulsory process for attendance of witnesses and the costs of obtaining attendance of willing witnesses; the possibility of a view; the enforceability of a judgment, if obtained; the relative advantages and obstacles to a fair trial; other practical problems that make a trial easy, expeditious, and inexpensive; the administrative difficulties of court congestion; the interest in having localized controversies settled at home; the appropriateness in having the trial of a diversity case in a forum that is at home with the state law that must govern the action; and the avoidance of unnecessary problems with conflict of laws.

Commercial Equipment Co., Inc. v. Barclay Furniture Co., 738 F. Supp. 974, 976 (W.D.N.C. 1990).

### III. DISCUSSION

#### A. Lack of Personal Jurisdiction

Defendant now seeks dismissal for lack of personal jurisdiction and improper venue pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3). (Document No. 10, p. 1). In the alternative, Defendant seeks a transfer of venue to the United States District Court for the Middle District of Florida, Jacksonville Division pursuant to 28 U.S.C. §§ 1406(a), 1631. Id.

The relevant analysis for this Court under Rule 12(b)(2) is a "single inquiry of whether application [of the North Carolina long-arm statute] is consistent with constitutional due process." Id. at 4 (quoting Universal Leather, LLC v. Koro AR, S.A., 773 F.3d 553, 558–59 (4th Cir. 2014)); see also (Document 11, p. 5) (citing Christian Sci. Bd. of Dirs. Of the First Church of Christ, Scientist v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001)).

Defendant's initial contention on the issue is that "Plaintiffs' Complaint does not contain specific allegations that JOBBOX CO. has availed itself of the privilege of conducting activities in the State of North Carolina" and that, therefore, Defendant is not subject to personal jurisdiction in North Carolina. (Document No. 10, p. 5). Defendant cites a Declaration (Document No. 10-1), in which Stephen Bradshaw, CEO of JOBBOX CO., stated with "personal knowledge that no

business interests or activities whatsoever of JOBBOX CO. have been impacted by or relied upon JOBBOX CO. availing itself of the privilege of conducting activities in North Carolina." (Document No. 10, p. 5-6).

Defendant next notes that Plaintiffs identified "offering of the Jobbox App and maintenance of the website at the domain https://www.jobbox.co" as the basis for their claims. Id. at 6 (citing Document No. 1, pp. 8-9). However, Defendant states that "[n]o consumers located in North Carolina can use the Jobbox App or utilize the services it provides." Id. Further, "[t]his geographic limitation is noted on the website at the domain https://www.jobbox.co." Id.

Defendant contends that it has "no contacts with the State of North Carolina," so the minimum contacts standard cannot possibly be met. Id. Exercise of personal jurisdiction over Defendant in North Carolina, Defendant therefore argues, would force inconvenient litigation in a forum entirely irrelevant to Defendant's business operations. Id.

Plaintiffs, however, contend that personal jurisdiction over Defendant in North Carolina is appropriate. (Document No. 11, p. 5). They argue that Defendant established sufficient minimum contacts when it "intentionally promoted its infringing mark nationwide through a free downloadable app and on its website and social media accounts." Id. at 6. Further, Plaintiffs assert:

> Where a person (1) directs electronic activity into the forum state, (2) with a manifest intent of engaging in business or other interaction with the state, and (3) the activity creates a cause of action in the state, personal jurisdiction is proper.

Id. at 6 (citing ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 714 (4th Cir. 2002)). Plaintiffs therefore highlight the various electronic channels through which Defendant has made contact with the state, the most notable of which include an accessible and interactive website and an app available on large distributors' platforms. Id. Plaintiffs contend that the harm of the alleged

trademark infringement is felt when users are able to access the site and see the mark in question prominently displayed. Id.

Further, Plaintiffs also argue that "Defendant has directed its business and infringing mark to North Carolina by filing a federal trademark application for the infringing mark," which would give Defendant nationwide rights to the mark. Id. at 7.

Directly challenging Defendant's assertion to the contrary, Plaintiffs contend that North Carolina consumers *can* use Defendant's app. Id. at 9. Though the services contained on the app are not offered in North Carolina, Plaintiffs note that the app is still accessible and navigable within the state. Id.

Arguing that personal jurisdiction over Defendant in North Carolina would be constitutionally reasonable, Plaintiffs challenge the validity of Defendant's contention that North Carolina is a distant and inconvenient forum. Noting that Defendant's primary points of business are in Florida and Michigan, Plaintiffs contend that North Carolina, as a rough midpoint between the two states, is not an overly inconvenient forum. Id. at p. 10.

In Defendant's reply, it contends that the electronic activity and accessibility in North Carolina is insufficient to establish minimum contacts. (Document No. 13, p. 1). Defendant again cites the Fourth Circuit, which established the following guide for personal jurisdiction within the context of the Internet:

> [A] State may, consistent with due process, exercise judicial power over a person outside of the State when that person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts.

Id. at 2 (quoting ALS Scan, Inc., 293 F.3d at 714). Defendant contends that Plaintiffs have failed to satisfy the first two factors.

8

Case 3:21-cv-00175-RJC-DCK   Document 16   Filed 11/09/21   Page 8 of 15

The undersigned is persuaded by the Fourth Circuit case cited by Defendant. Even in the light most favorable to Plaintiffs, the undersigned does not find that the three-part test from ALS Scan, Inc. supports personal jurisdiction over Defendant in the Western District of North Carolina. The undersigned is not convinced that Defendant directed electronic activity toward North Carolina. See ALS Scan, Inc., 293 F.3d at 712.

Despite Plaintiffs' contentions, personal jurisdiction is dependent upon Defendant's contacts with the forum state, not Plaintiffs' contacts. Plaintiffs assert "Apex's position as an injured North Carolina resident further solidifies the sufficiency of Defendant's contacts with the state for jurisdiction purposes," but Plaintiffs' state of residence does nothing to prove the validity of personal jurisdiction over Defendant. (Document 11, p. 8). Further, Plaintiffs' contention that Defendant is subject to personal jurisdiction because of "its downloadable app available nationwide through the Apple App Store and Google Play as well as online through its website jobbox.co," goes too far. Id. at 1. That argument – taken to its extreme – would mean that Defendant would be subject to personal jurisdiction nationwide, since Defendant's app is technically downloadable across the country merely because of the availability of App Store access nationwide. The undersigned does not agree with such an extreme, expansive view of personal jurisdiction, and it does not fit within the Fourth Circuit's parameters for personal jurisdiction within the Internet context.

The ALS Scan, Inc. case is a helpful guide on this issue. The Fourth Circuit found:

> a person who simply places information on the Internet does not subject himself to jurisdiction in each State into which the electronic signal is transmitted and received. Such passive Internet activity does not generally include directing electronic activity into the State with the manifested intent of engaging business or other interactions in the State thus creating in a person within the State a potential cause of action cognizable in courts located in the State.

293 F.3d at 714. The basis of personal jurisdiction called for by Plaintiffs is precisely the sort of "passive Internet activity" that does not subject a defendant to personal jurisdiction. The Court in ALS Scan, Inc. noted an adjustment to the typical three-part personal jurisdiction inquiry that district courts ordinarily employ:

> Applying the traditional due process principles governing a State's jurisdiction over persons outside of the State based on Internet activity requires some adaptation of those principles because the Internet is omnipresent—when a person places information on the Internet, he can communicate with persons in virtually every jurisdiction. If we were to conclude as a general principle that a person's act of placing information on the Internet subjects that person to personal jurisdiction in each State in which the information is accessed, then the defense of personal jurisdiction, in the sense that a State has geographically limited judicial power, would no longer exist. The person placing information on the Internet would be subject to personal jurisdiction in every State.

293 F.3d at 712.

Though the app is viewable, downloadable, and navigable in North Carolina, the service it provides is not usable. Further, Plaintiffs presented insufficient evidence for the undersigned to conclude Defendant manifested intent to engage in business or other interactions in North Carolina. The "SERVICE NOT AVAILABLE" message presented to North Carolina users makes the opposite clear, that Defendant had no intention of conducting its business within the state. In accordance with the Fourth Circuit's holding, the undersigned finds that the mere presence of Defendant's app on the Internet and in the App Store does not constitute purposeful availment for the purpose of personal jurisdiction.

Under the ALS Scan test, then, the undersigned concludes that an app whose sole function is to provide a service that is not functional in North Carolina does not satisfy the level of intentional activity that a defendant must undertake to meet this prong. 293 F.3d at 712. The word

10

"directs" contemplates more intentionality than Plaintiffs' argument would suggest. Based on the foregoing, the undersigned finds that the Court lacks personal jurisdiction over Defendant.

### B. Improper Venue

In the event that the presiding district judge – contrary to the foregoing – finds that there *is* personal jurisdiction over Defendant, the undersigned provides the subsequent analysis on venue. The undersigned finds that venue is improper in this district. Transfer is therefore warranted as explained below.

Defendant asserts that its business activities have no connection to North Carolina, nor is Defendant a resident of the state. (Document No. 10, p. 8). Defendant therefore urges the Court to either dismiss for improper venue or transfer the case to the United States District Court for the Middle District of Florida, Jacksonville Division, which it asserts is a proper venue. Id.

Plaintiffs argue that Defendant engaged in harmful conduct in this district, so venue is proper. Id. at 12. If this Court finds venue to be improper, Plaintiffs request that this Court give them an opportunity to re-file a complaint in a venue of its choosing, rather than transferring the matter to the Middle District in Florida. Id.

28 U.S.C. § 1391(b) governs venue in this action. See Savvy Rest v. Sleeping Organic, LLC, 2019 WL 1435838 (W.D. Va. Mar. 29, 2019) ("The Lanham Act has no special venue provision and thus the general venue statute is appropriate") (quoting Woodke v. Dahm, 70 F.3d. 983, 985 (8th Cir. 1995)). 28 U.S.C. § 1391(b) calls for a three-pronged analysis for determining proper venue. First, an action may be brought in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1). It is clear that Defendant does not reside in this district because residence for the purpose of this provision of the statute means "any judicial district in which such defendant is subject to the court's

personal jurisdiction with respect to the civil action in question." 28 U.S.C. 1391(c)(2). As the Court's preceding analysis on personal jurisdiction concludes, the undersigned finds that this Court does not have personal jurisdiction over Defendant – thus, Defendant does not reside in this district for the purposes of § 1391(b)(1).

Next, "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated" may be a proper venue. Id. at § 1391(b)(2). As also explained in the foregoing personal jurisdiction section, the undersigned does not find that a substantial part of the events occurred in this district, so venue is improper under this prong as well. "In a trademark infringement action, a substantial part of the events occur both where the labels are affixed and where confusion of purchasers is likely to occur." Kaia Foods, Inc. v. Bellafiore, 70 F. Supp. 3d 1178, 1184 (N.D. Cal. 2014). But, for purposes of this venue provision in the Internet context, "courts have generally held that the mere fact that a website that displays the allegedly infringing mark can be accessed in the district is not sufficient for venue in the absence of sales in the district or other activities aimed at the district." Id. Here, the mere existence and accessibility of Defendant's app on the App Store in North Carolina is insufficient for purposes of venue under § 1391(b)(2).

Finally, "if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action" may be a proper venue. Id. at § 1391(b)(3). The undersigned finds that venue is proper for the reasons explained below in another district – the Middle District of Florida – and in this district, the Western District of North Carolina, Defendant is not subject to personal jurisdiction. Thus, on this provision of the venue statute, the Court similarly concludes that venue is improper in the Western District of North Carolina.

12

Case 3:21-cv-00175-RJC-DCK Document 16 Filed 11/09/21 Page 12 of 15

Venue is, however, proper in the Middle District of Florida. Plaintiffs and Defendant acknowledge that Defendant is incorporated in Florida with a principal place of business in St. Augustine, Florida. See (Document No. 1, p. 2); (Document No. 10, p. 2). Further, Defendant's app is functionally available to users in the state of Florida. (Document No. 10, p. 2). St. Augustine is within the Middle District of Florida. Because § 1391(b)(1) dictates that venue is appropriate in "a judicial district in which any defendant resides," the Middle District of Florida is a proper venue for this matter. The undersigned concludes that Defendant resides in the Middle District of Florida for the purposes of § 1391(b)(1) because residence under this provision of the statute is defined as a district in which the defendant "is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2). Defendant is undoubtedly subject to personal jurisdiction in the Middle District of Florida because it is subject to general personal jurisdiction there because its "affiliation[] with [Florida is] so 'continuous and systematic' as to render [it] essentially at home in [Florida]." Goodyear Dunlop Tires Ops., S.A. v. Brown, 564 U.S. 915, 919 (2011); see also Daimler AG v. Bauman, 571 U.S. 117, 137 (2014) ("the place of incorporation and principal place of business are paradigm]…bases for general jurisdiction" (internal quotations and citations omitted)). Thus, Defendant resides in the Middle District of Florida for the purposes of § 1391(b)(1) and venue is proper there.

Although Plaintiffs chose this forum, the undersigned finds the totality of the circumstances favors transfer to the Middle District of Florida. "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). The undersigned therefore recommends transfer to the Middle District of Florida as the alternative to dismissal. "The language of § 1406 is amply broad enough to authorize the transfer

13

Case 3:21-cv-00175-RJC-DCK   Document 16   Filed 11/09/21   Page 13 of 15

Venue is, however, proper in the Middle District of Florida. Plaintiffs and Defendant acknowledge that Defendant is incorporated in Florida with a principal place of business in St. Augustine, Florida. See (Document No. 1, p. 2); (Document No. 10, p. 2). Further, Defendant's app is functionally available to users in the state of Florida. (Document No. 10, p. 2). St. Augustine is within the Middle District of Florida. Because § 1391(b)(1) dictates that venue is appropriate in "a judicial district in which any defendant resides," the Middle District of Florida is a proper venue for this matter. The undersigned concludes that Defendant resides in the Middle District of Florida for the purposes of § 1391(b)(1) because residence under this provision of the statute is defined as a district in which the defendant "is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2). Defendant is undoubtedly subject to personal jurisdiction in the Middle District of Florida because it is subject to general personal jurisdiction there because its "affiliation[] with [Florida is] so 'continuous and systematic' as to render [it] essentially at home in [Florida]." Goodyear Dunlop Tires Ops., S.A. v. Brown, 564 U.S. 915, 919 (2011); see also Daimler AG v. Bauman, 571 U.S. 117, 137 (2014) ("the place of incorporation and principal place of business are paradigm]…bases for general jurisdiction" (internal quotations and citations omitted)). Thus, Defendant resides in the Middle District of Florida for the purposes of § 1391(b)(1) and venue is proper there.

Although Plaintiffs chose this forum, the undersigned finds the totality of the circumstances favors transfer to the Middle District of Florida. "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). The undersigned therefore recommends transfer to the Middle District of Florida as the alternative to dismissal. "The language of § 1406 is amply broad enough to authorize the transfer

of cases, however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed had personal jurisdiction over the defendants or not." Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466 (1962).  Accordingly, the undersigned finds that despite the lack of personal jurisdiction over Defendant, transfer to the Middle District of Florida is appropriate.

## IV.  RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that (Document No. 9) be **GRANTED** to the extent that venue in this matter be **TRANSFERRED** to the United States District Court for the Middle District of Florida.

## V.  TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days** of service of same.  Responses to objections may be filed within fourteen (14) days after service of the objections.  Fed.R.Civ.P. 72(b)(2).  Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court.  Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005);  United States v. Benton, 523 F.3d 424, 428 (4th Cir. 2008).  Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal.  Id.  "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'"  Martin v. Duffy, 858 F.3d 239, 245 (4th Cir. 2017) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007).

**IT IS SO RECOMMENDED**.

Signed: November 8, 2021

David C. Keesler
United States Magistrate Judge